Good afternoon, Your Honor. May I proceed? Harsh Shabra for the petitioner. Your Honor, petitioner is a married man. He is married to a U.S. citizen and his wife has filed a I-130 petition for him that has been approved since 2008. And petitioner has two U.S.-born kids. After filing the petition for review with this court, this case was referred for mediation and we have requested from San Francisco Immigration Office for a joint motion to reopen and that request was denied. What are you telling us? Tell me. This has gone to mediation? Yeah, it went for the mediation, but DHS refused to grant the motion to reopen because the defendant is married to a U.S. citizen. So we are back again for the asylum hearing, Your Honor. I'm not understanding. You did go to mediation, but it failed? Yes, Your Honor. I'm sorry? Yes, Your Honor. Because? You're not supposed to tell us that. Don't tell us that. Okay. So you're now here to discuss the actual order? Yes, Your Honor. When did you go to mediation? Because the respondent is married to a U.S. citizen and his wife has filed a petition for him, an alien relative petition, I-130, and that has been approved. And so we tried to have this case closed so that petitioner can go back to his home country or later on if the law changes, he can seek adjustment of status on the basis of marriage to a U.S. citizen. But that request has been so we are proceeding with his asylum hearing. Does he have children? Yes, Your Honor. He has two U.S.-born children. He is self-employed and he is self-employed and he runs a transportation company. He has no criminal history. He met all the guidelines of Morton Memo for prosecutorial discretion so that his case- Are you talking about the Morton factors? Yes, Your Honor. All right. Essentially, as a result of the mediation, you made a request to the board to reopen, but they didn't reopen. We made a request to the San Francisco District Office for joining us a motion to reopen before immigration judge, but that request was denied and no reason was given. When was it denied? Three months ago. Three months ago? Yes, Your Honor. Okay, so meanwhile- Well, I don't understand. You made the request. You made a request- Yes, Your Honor. To the San Francisco office and you were denied. Yes, Your Honor. Okay. Because this case was referred for the mediation so that both parties can reach an agreement so this case can be resolved with the mediation. And mediator told us to go back to the San Francisco immigration office and we filed a request under Morton Memo to close this case because the responder is married. He has no criminal history. He has two U.S.-born kids. He has I-130 relative petition approved by DHS, but they denied it. So we are back for the merits of the asylum case. Okay. All right. Okay. So what do you want to tell us? Okay. Your Honor, petitioner has applied asylum withholding of removal and relief in a torture convention as he had danger for his life and he had fear to go back to India. Petitioner was in state of Punjab, India on numerous occasions because of his membership in political party Shurmani Akhali Dal Amritsar. Responder- Let me ask you this. How old is your client? He's 46-year-old? Yes, Your Honor. Yeah. He's a citizen of India? Yes, Your Honor. And he applied for asylum withholding of removal and protection under CAT? Yes, Your Honor. And you just told us he's married? How long has he been married? Since 2004. 2004. He has two children? Yes, Your Honor. Born in this country? Yes, Your Honor. And how old are they? Youngsters? The youngest one is two years old. Two years old? Yes. How about his wife? The age of the wife? What? The age of the wife or... No, no. What do we know about her? She a citizen? She a citizen. You a citizen. All right. And he says that he was a member of the Akhali Dal Man party? Yes, Your Honor. A Sikh secessionist political party? Yes, Your Honor. But once an independent Sikh state called Khalistan. Then he says that he, his brother, and his friend were arrested, beaten, and tortured by police many times? Yes, Your Honor. Yeah. Okay. And so this is all in your briefs? Yes, Your Honor. Okay. And so why don't we hear from the government? Okay? Yes, Your Honor. All right. May it please the Court, Colin Tucker for the Attorney General. The agency's denial of relief in this case easily withstands review for... Sorry, I'm not hearing you. Sorry. The agency's denial of relief in this case easily withstands review for substantial evidence? I can't understand what you're saying either. Okay. I'm saying that the agency's denial of relief in this case easily withstands review for substantial evidence? Well, you know what's odd about this case? If you actually look on, you know, nowadays you can get information pretty easily. And if you look at the actual lists of the constituencies in India, it turns out there is such a constituency. It's just at a lower level. And so the basic reason that he was found not to understand his political situation turns out not to be true. What do we do about that? I don't think that that's the case, Your Honor. I think that... Well, it is a case. It is a case. I think that the level... The government dropped the ball severely here. He was asked what legislative constituencies... He was asked... He asked what constituencies. And he was shown a list of 13. You see, those are all parliamentary constituencies. Yes. Yes. But there are about 130-some-odd other constituencies there that there are. All you had to do was look in the computer, look a little further down. We've got all the official records here. I don't think that those are constituencies, Your Honor. They are constituencies. That's what they're called. They are constituencies. And moreover, this person that he said ran in 1999, didn't run in 1999, but she was elected at other times, and the other person he said was elected in 2002 was elected in 2002, and all of this could have been ascertained. So, I mean, I understand it's not in the record, but essentially, you'd be asking us to affirm that he was lying when, in fact, if you check his information, it checks out pretty well. Your Honor, I don't understand... Were you the lawyer on this case? No, Your Honor. No. Where is that person? What? I didn't even brief that case. She's no longer with the office. She's no longer here. Let me tell you this. See, the government submitted a list, and the government represented that that list was all the constituencies in Punjab, and that list actually only listed the parliamentary constituency. And so my question was, why didn't the government list all the constituencies in Punjab? They didn't list the 117 assembly constituencies. I remember they talked about Dhaka. Yes, Your Honor. They said, I can't find it. That was what he said. It's not here, and that's what he got impeached on, right? Dhaka is a constituency, and it's one of the 117. If that's the case, Your Honor, then perhaps, yes, the government was mistaken in that respect. The government was incompetent when they did that. And you cause us plenty of trouble, and you cause plenty of trouble for these people. Your Honor, all that we need to uphold this adverse credibility determination... What? All we need to uphold this adverse credibility determination... Well, you've got to uphold the government. I hear what you're saying. You've got to uphold the government's credibility, too. It's for them to find that one of the... Well, that's not true either in this instance, because unlike a lot of these cases, I.J. said there are two major reasons, and there are six other reasons, which individually I wouldn't rely on. Yes. Right. So therefore, how can one of them be good enough? The other major inconsistency, which was his inability to name who his constituency's parliamentary candidate was. But he did name that person, see? He named that person. He was a little confused, but that person was a member of parliament, I think it was a couple of years earlier. Ten years earlier, I believe. Whatever it was. 1989. Are you aware of all these assembly constituencies? And then he also named another person who said he was an elected constituent in 2002, and that was correct. He was able to answer that question accurately, Your Honor, but he was not able to answer the other question accurately. And how many of the people in the United States do you think, if you ask them who their representative was ten years before, would know? And if those people didn't know, Your Honor, then they would not be able to credibly claim that they were persecuted because they were very active in politics. Really? And it would be justified to find them not credible in that regard. He said he was active in the 1999 elections. He said that he traveled throughout the province giving speeches, attending protests, handing out literature, but he was unable to... Last week, I had to fill out a piece of paper about when my brother died, which was a very traumatic experience in my life. It turns out I was off by a year. That means I was lying. I can tell you everything about when my brother died, but I happened to be off by a year. Okay. No, Your Honor, that wouldn't mean that you were lying. Apparently, and which would I say in these cases? I think that... Well, first, I think those are very true. I think this Court has held many times that small differences in dates are not significant inconsistencies that can go to the heart of a claim and therefore uphold an adverse credibility determination. Let me, yeah. I also think that there's a... He was asked, he was asked during his hearing by the government to name the Akali Dal Mann candidate from his constituency in the 2002 State Assembly election. Yes. He was asked that. Yes. And he replied that it was Vikramji Singh Khalsa as a Al-Qaeda Dal Mann candidate for DACA. And he also testified that Vikramji Singh, that's another person, did not win, but that the Congress Party candidate won. Okay. Testify that. That was totally correct. Yes, it was, Your Honor. He gave a number, he said a number of things. It shows that he certainly remembered certain things that happened. He was accurate on that. You're not making this up. He was able to accurately answer one of the questions, Your Honor, but the focus here needs to be on what he wasn't. He was able to answer one question, but then he was asked a very deceptive question by the government, because the government said that those 13 constituencies was the full list of constituencies. Your Honor, I think that I've already retreated on that particular point. I don't think... Well, you've retreated on it. Yes, because... Yes. And that shows that he tells the truth, doesn't it? Your Honor, the fact that one of the inconsistencies doesn't hold up doesn't mean... But the government came in there and didn't even ask a correct, honest question of him, and the information that the government presented, the constituency list by the government, although the government claimed it was a list of all the constituencies in Punjab, it doesn't list the 117 assembly constituencies, including Dhaka. And he... That's the constituency. I don't like that word. Me neither, Your Honor, especially not now. That he said was his constituency. That's correct, Your Honor. And he was right. He was right, because whoever did this for the government didn't realize, that's what I would... That's probably true, Your Honor. Yeah. You know, is that the way the government prepares its case? I haven't found that to be the case, Your Honor. But then the immigration judge says the same thing, and the ALJ says the same thing. I mean, the... They all say that. ...says the same thing. And... They all relied on incorrect information put forth by the government. I would note, Your Honor, that page 129 of the record, the petitioner was given a chance to explain this apparent inconsistency, and he in no way... He did explain. He said it is a constituency. What else is he supposed to say? He said he didn't understand why it didn't appear. Yeah, he didn't understand why it didn't appear. You know, he's, he's, he's... Was he speaking English? He was shown the list, Your Honor. Presumably, he might have said... What does he speak? ...there are many more constituencies. No, no, no. He was shown the list of the parliamentary constituencies. Of the 13, yes. Yeah. And why isn't it on the list? I don't know why it's not, why it's not on the list, Your Honor. I assume... Because it isn't on the list. It's on the other list. Because there are two, there are two different types of constituencies. Let's talk about some of the other... I've got all, I've got all of these statistical reports here. In the record, Your Honor? I'll give them to you. You know, you just get them, if you get on that computer, you can fill them all up. All right, then they said that he was inconsistent about where he fled to. That didn't seem very accurate, because he seems to have said pretty clearly is that he went eventually to some place, but first he went to another place. That's the explanation that the petitioner's brief contains, Your Honor. Yes. And what's wrong with that? Well, I think it wasn't exhausted before the agency first. What? There was no exhaustion of that explanation before the agency. That was what he said even in his asylum affidavit. He said he went to... I believe it's between Ariana and Ludiana. Right from the first time, and then he said eventually he went to this other place. And then he said, and then they also say he said his brother, they were inconsistent about when his brother went into hiding. But in fact, the record is pretty clear that the family, he went into hiding earlier. The family lost track of him in April, not that he went into hiding in April. He said, after April, I didn't know where he was. He was in hiding. That's what the father said, right? I believe so, Your Honor. All right. So that wasn't inconsistent either. He also said, Your Honor, that he agreed to host a meeting at his house, despite the fact that he knew that the police were watching him at the time, even though he understood that he might be persecuted for that. Three different dates were given for when petitioner and his brother went into hiding, not just two. No, that's what I don't see that. It seems to me they said that they went into hiding right afterwards, and then they kept going different places and hiding. And, Your Honor, one of the letters that he received and submitted his documents. Well, that's true. But I mean, why is it that if somebody else says something else, that makes him an inconsistent liar? If somebody else. Makes the evidence of his claim inconsistent, Your Honor. Inconsistent. But inconsistency usually means with yourself, right? I mean, in other words, insofar as it's evidence that you're lying, it's because you can't keep your story straight. If some other person says something else, why does that prove you're lying? It calls the credibility of your own claim into question, Your Honor. Why? Well, one of them presumably is wrong. Right. One of them is. Which one? I think that's up to the immigration judge to decide, Your Honor. It's a question of fact. Well, the immigration judge already, I think somewhere here, they went through this whole thing. And here's this guy says he's from DACA, and that's my constituency. And he's told, he's told that this short list represents all of the constituency. And why can't you explain this? Why was not DACA on the list of all the constituencies? And the government and the judge are telling him that his constituency was not on the official list. That's what they're telling him. I think. You know, so he gets, you know, you've got, you've got, was he speaking English? Did he have a translator? I'm actually not positive, Your Honor. I'm not, I'm actually not positive whether he was using a translator or not. He used a translator. Didn't he? He had a translator. He was, he was using a translator. Translator. Okay. It wasn't, yeah. So then, you know, you've got. All right. But. As I've never seen anywhere. Let's suppose that this is where we end up. Okay. There was a problem. Let's suppose where we end up is he was wrong about the DACA. He was wrong about the inconsistency about when the brother, he and his brother went into hiding. There was no inconsistency. He was wrong about that he was inconsistent about what happened to his father after the police tortured him because nobody ever asked him at that point what happened to his father. And in fact, in the application, he did say what happened to his father. And he never said otherwise. So that's three, four, I think that are not right. And then the inconsistency about where they went doesn't seem to be inconsistent because he says that they went to Ludhiana right after the January 20th meeting. And then afterwards they went to Ambala and he was consistent about that. So suppose let's suppose we have at least that many off the table. What do we do? Well, maybe more, but let's just stick to that for now. In that case, we're left with two more of the minor inconsistencies, Your Honor, and one of the major. And all that we need to uphold the adverse credibility determination in this case. Do you think this district, this IJ, had he known about that he was actually right about the constituency and that he was right about the rest of these things, that she would have ruled the same way? I have no idea how she would have ruled. No, you certainly don't. Your Honor, I'm sorry. How can we uphold it at that point? You can uphold, Your Honor, because court's precedent states that as long as one major inconsistency is supported by substantial evidence, then the adverse credibility determination must be upheld. And here, one of the major inconsistencies. Do you think the fact that he didn't, he was wrong by some years as to one of the two people he was asked about who represented his constituency, that's made, that is sufficient to prove that everything, that even though he did know the constituency and he did know the other person who was elected and the rest of his story pretty much largely hangs together, that's enough reason to call him not credible? I think the fact that he claimed that he was persecuted on the basis of his participation in the 1999 elections, among other things, but was unable to name whom the candidate he voted for in those elections was, yes, warrants upholding the adverse credibility determination, Your Honor. Okay. If there's nothing else, I'm prepared to submit. Does this make you feel good, coming here, knowing what occurred at this hearing? Seriously? No, Your Honor. No. No. It's embarrassing, isn't it? Not. Not for you, because nothing seems to bother you anymore, but it bothers me. I mean, part of the problem is that, you know, I understand why it happens, because we have the argument so much later. But the fact that the person who was doing the argument had nothing to do with the briefs and nothing to do with the case below makes it very difficult for everybody, including you. Yeah. Yeah. Where is this other person? He's probably long gone. It's years ago, right? Yes, Your Honor. What happened? Did he get fired? The primary person who drafted the brief was a contractor, Your Honor. So, yes. Was a what? Was a contractor. So, yes, they were fired during the... Contractor? Yes, during the sequesterization. So where... So what does that mean, a contractor? I didn't know we had such people. I didn't know we had contractors. There are a few here and there. There were a few here and there within the office. I mean, they outsource it? Is that what they were doing? They're employees of the various attorney teams within the office. Oh, so, I mean, you don't mean that they're literally not employed? No, they're not off-site or anything along those lines. So this was not a... This was not really an immigration person? The only thing that she did with us was immigration law. It was her first special... It was the first thing that she'd ever specialized in. It's the first time she had an immigration case? No, Your Honor. So what are you telling us about her? I'm just trying to answer the questions that I'm asked about her, Your Honor. So what did she do before? She was in law school. Oh, she was in law school? Yes. And then was she working as an intern or an extern? I think she started as an intern and then was contracted to continue to work, Your Honor. She was starting as an intern, and then how long was she doing that? I don't know, Your Honor. I don't know her employment history. She was with our attorney team when I joined. She left a year later. How long was she with the Justice Department? I honestly don't know, Your Honor. She was about my age, so it can't have been for very long. You're about 17 years old, are you? You're probably, yes, Your Honor. I mean, I think it's kind of an odd and interesting question. If there is something sort of easily ascertainable outside the record that demonstrates that, you know, a primary basis for the decision was incorrect, what would we do with that point? I think it's fair. It's a fair inquiry. Don't you think that the Board might like to know that and think about it again? I don't. I know, Your Honor, that the answer that I need to be giving right now is that the statute requires that the court's review be restricted to the record itself. Okay. You don't think the government should confess error on this? I don't think that a confession of error in this case changes the outcome, Your Honor. You're a stubborn guy, aren't you? I'm paid to be, Your Honor, yes. Yeah. Thank you. Well, okay. All right. This matter is submitted, and the court will recess till tomorrow morning at 8 o'clock.
judges: Amon, Pregerson, Berzon